## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:12-CV-10** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **SUPT. GIROUX, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

**I.    Statement of Facts and of the Case**

**A.    Introduction**

The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit

at the State Correctional Institution (SCI) Muncy, who by her own account suffers

from a cascading array of severe mental illnesses, and who, in other litigation before

this Court, candidly acknowledges that she is profoundly disturbed, informing the

court that:

> My mental health is declining. I suffer from OCD so bad I scrub my
> hands till they bleed, confusion, PTSD, disassociative disorder, I smell,
> see and hear things not there, severely stressed, phobias, agoraphobia,
> severe anxiety, lack of interest in things, lack of arousal in things, racing
> thoughts, suicidal, cognitive problems and disorders, lack of interest in

1

life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7).

Furthermore. Ball is also an inmate who is alleged to engage in destructive, self-defeating and senseless behavior, conduct which was aptly described by prison officials in one of Ball's companion cases in the following terms:

[Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit.

(Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa., Doc. 27, p.13.)

Ball is also, by her own admission, an inmate with a propensity of sudden, explosive rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.). In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at present Ball has a total of twenty two lawsuits pending before this

court.[1]  Ball has also been a prodigiously unsuccessful litigant, who has had at least

three prior lawsuits dismissed either for failure to exhaust her administrative remedies,

or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief

could be granted. See, e.g., Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.); Ball v.

Hartman, No. 1:09-CV-844 (M.D. Pa.);  Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.);

Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.   Ball's Current Lawsuit

It is against this backdrop that Ball pursues the instant case. On January 4,

2012, Ball filed a civil complaint, (Doc. 1), which–fairly construed–presented two

Eighth Amendment claims relating to her conditions of confinement at SCI Muncy.

First, in this complaint, Ball alleged that she was placed in a strip cell on

November 27, 2011 "for non-suicidal reasons." (Id.)  Ball then alleges that, while in

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.);Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Curham No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-12 (M.D.Pa.)..

the strip cell, she was provided only a limited wardrobe, and was denied a mattress for seven days, until December 4, 2011. (Id.) Ball characterizes the denial of this mattress as cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution, alleging that the denial of the mattress for a week caused her severe pain due to a pre-existing back condition, a medical condition which Ball alleges was known by staff. According to Ball, this action *per se* violated her constitutional rights because: "You can't deny inmates a mattress even if they do not have back problems, but I do." (Id.)

Ball's second conditions-of-confinement claim relates to prison food and is presented in an even more spare and elliptical fashion. In her complaint, Ball alleges that "they used my food as punishment also." (Id.) Ball does not allege any well-pleaded facts in support of this legal conclusion, however, beyond complaining that her food was "put on a Styrofoam tray for absolutely no reason."(Id.) Thus, the only factual matters averred by Ball with respect to this particular Eighth Amendment claim seems to be that her meals were served on Styrofoam trays. (Id.)

On the basis of these otherwise unadorned allegations Ball sues four

correctional officials–Superintendent Giroux, Captain Boyer, Lieutenant Sweally and Correctional Officer Meixal–and demands both $50,000 in compensatory damages and punitive damages of $50,000 from each defendant. Along with this complaint, Ball has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) For the reasons set forth below, this motion will be GRANTED, but as part of the court's legally-mandated screening process it is recommended that this complaint, in its current form, be dismissed for failure to state a claim upon which relief can be granted.

## II.     Discussion

### A.     Screening of *Pro Se* Prisoner Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."   Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

8

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that many of the claims set forth this complaint, in their present form, are subject to summary dismissal.

## B. Ball's Current Complaint Fails to Meet the Pleading Standards Prescribed by Law

Judged against these standards, many of the claims set forth in Ball's current *pro se* complaint clearly fail to state a claim upon which relief can be granted. At the outset, liberally construed, the gravamen of Ball's complaint is that prison officials

9

violated Ball's rights under the Eighth Amendment to the United States Constitution

by displaying "deliberate indifference" to this inmate's needs when they fed her food

on Styrofoam trays and denied her a mattress for seven days. Ball faces an exacting

burden in advancing these Eighth Amendment claims against prison officials in their

individual capacities. To sustain such claims, Ball must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted). In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." Id. "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the

courts have held that a mere generalized knowledge that prisons are dangerous places

does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x

743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff

complained about cellmate who had a history of psychological problems, but where

plaintiff failed to articulate a specific threat of harm during the weeks prior to an

attack.)   In short, when "analyzing deliberate indifference, a court must determine

whether the prison official 'acted or failed to act despite his knowledge of a substantial

10

risk of serious harm.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' <u>Id</u> . at 837." <u>Garvey v. Martinez</u>, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to conditions of confinement claims like those apparently advanced by Ball. In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

<u>Atkinson v. Taylor</u>, 316 F.3d 257, 272 (3d Cir. 2003).

In this case, Ball has advanced two Eighth Amendment conditions-of-confinement claims. First, Ball has alleged that the prison's decision to deny her a mattress for seven days violated her constitutional rights. Ball advances this claim, pleading in the alternative, asserting both a *per se* rule requiring mattresses for inmates and making a more fact-specific claim. In particular, Ball alleges that: "You can't deny inmates a mattress even if they do not have back problems, but I do." (<u>Id</u>.)

Courts have frequently considered the question framed by Ball in this complaint;

namely, whether the brief denial of a mattress to inmates so "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347(1981), that it violates the Eighth Amendment's prohibition against cruel and unusual punishment. At the outset, to the extent that this conditions-of-confinement claim rests on Ball's categorical assertion that, "You can't deny inmates a mattress even if they do not have back problems," we find that Ball misconstrues the law in this field and this claim of a *per se* right to a mattress must be dismissed. Inmates do not have an absolute constitutional right to a mattress, as Ball asserts. Quite the contrary, it is well-settled that: " Pursuant to the case law related to the denial of bedding, the denial of [an inmate's] mattress for a short period of time does not rise to the level of a constitutional violation." Milhouse v. Gee, No. 09-2134, 2011 WL 3627414, *13 (M.D.Pa. Aug. 17, 2011) citing Lane v. Culp, Civ. No. 05–576, 2007 WL 954101 (W.D.Pa. Mar.28, 2007) (holding that denial of clothing and bedding for period of seven days does not rise to level of constitutional violation); Castro v. Chesney, Civ. No. 97–4983, 1998 WL 767467 (E.D.Pa. Nov. 3, 1998) ("Plaintiff's allegation that he was deprived of a mattress and blanket for a period of two days, even if proved, would not rise to the level of a constitutional violation."); Stephens v. Cottey, 145 F. App'x 179, 181 (7th Cir. Aug.11, 2005) (holding no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bedframe and

five days with no bedframe sleeping on the floor).

Therefore, Ball's categorical Eighth Amendment claim, which would adopt a *per se* rule requiring that inmates be provided mattresses at all times, fails as a matter of law. We find, however,  that the more fact-specific alternate claim which Ball may be making, that prison officials denied her a mattress knowing that she suffered from a particular back condition which could be exacerbated by sleeping on a cell floor, may state a claim which would not be subject to summary dismissal since in this setting "the majority of cases holding that floor sleeping transgressed constitutional boundaries did so based on an examination of all the attendant circumstances of incarceration." <u>Best-Bey v. Pennsylvania</u>, No. 06-5515, 2008 WL 161214, *6 (E.D.Pa. Jan. 16, 2008)(collecting cases).

As for Ball's conditions-of-confinement claim relating to the fact that her prison food was served on Styrofoam trays, courts frequently rebuff inmate complaints like those made here relating to the packaging and presentation of meals. Thus, "while prisoners are guaranteed a nutritionally adequate diet under the Eighth Amendment, <u>see Ramos v. Lamm</u>, 639 F.2d 559, 571 (10th Cir.1980), there is no constitutional right to hot meals. <u>See Brown-El v. Delo</u>, 969 F.2d 644, 648 (8th Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)." <u>Laufgas v. Speziale</u>, 263 F.App'x. 192, 198 (3d Cir. 2008).

Similarly, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)." Lindsey v. O'Connor, 327 F.App'x. 319, 321 (3d Cir. 2009). Nor does the presentation of food in an unappetizing fashion, by itself, violate the Eighth Amendment. Quite the contrary, with respect to this prison diets it is well-settled that:"[U]nappetizing food served in prison is not constitutionally actionable. Maldonado v. McFaden, No. 94–1477, 1994 U.S. Dist. LEXIS 16837, at *11 (E.D.Pa. Nov. 23, 1994) ('[T]he Eighth Amendment requires only that inmates be provided food that is adequate to maintain health, and served in a sanitary manner.')." Jones v. Beard, No. 10-5544, 2011 WL 3611470, *8 (E.D.Pa. August 16, 2011). Therefore, Ball's complaints regarding the presentation of her meals on Styrofoam trays simply do not rise to the level of a constitutional infraction. Ball cannot save this claim through her bald assertion that "they used my food as punishment also." (Doc. 1.) Such an assertion, without any further supporting facts, is simply "a formulaic recitation of the elements of a cause of actions [which] will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Finally, even if Ball had stated a colorable constitutional claim relating to her right to hot meals served on trays, or her absolute right to a mattress in prison, the

defendants are nevertheless entitled to qualified immunity from these claims for damages.   In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001), abrogated in part by <u>Pearson</u>, 555 U.S. 223; <u>Curley v. Klem</u>, 499 F.3d 199, 206 (3d Cir. 2007); <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  <u>Saucier</u>, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  <u>Pearson</u>, 555 U.S. at 232; <u>Saucier</u>, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity."  <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."  <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In

16

some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

17

In this case, prison officials were confronted by a difficult, obstreperous inmate. On these facts, prison officials could not reasonably have anticipated that providing Ball with food on Styrofoam trays, or briefly restricting her mattress access would constitute *per se* violations of some clearly established constitutional rights of the plaintiff.  In short, given the state of the law in this field, in this setting the defendants simply could not have recognized that their actions would, *per se*, violate "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore the defendants are entitled to qualified immunity on these claims.[2] In sum, to the extent that the conditions-of-confinement claims presented in Ball's complaint rest either on Ball's categorical assertion that, "You can't deny inmates a mattress," or on Ball's claim that serving food on Styrofoam trays violates the Eighth Amendment, the plaintiff has failed to state a claim upon which relief can be granted and  the defendants are entitled to qualified immunity on these claims.

While this screening merits analysis calls for dismissal of these claims in their current form, we recommend that Ball be given another, final opportunity to further

---

[2]In appropriate cases this court is entitled to address this qualified immunity defense *sua sponte*, when appropriate. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course, in part, because we find that the more fact-specific alternate claim which Ball may be making, that prison officials denied her a mattress knowing that she suffered from a particular back condition which could be exacerbated by sleeping on a cell floor, may state a claim which would not be subject to summary dismissal since "the majority of cases holding that floor sleeping transgressed constitutional boundaries did so based on an examination of all the attendant circumstances of incarceration." Best-Bey v. Pennsylvania, No. 06-5515, 2008 WL 161214, *6 (E.D.Pa. Jan. 16, 2008)(collecting cases).

We also adopt this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

19

Finally, we note that the Court should also strike the claim for a specific sum of unliquidated damages, $500,000, from this *pro se* complaint. In this regard **,** Rule 12 (f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f).  Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593 F. Supp. 1315 (D. Me. 1984). In this case, Ball's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.* The short plain statement of jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, that specific dollar claim will be stricken from the complaint without prejudice to the Plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 2), but that the Plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of January, 2012.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge